**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAKE ETHAN ROBERTS,<br><br>Defendant. | Case No. 26-00291-01-CR-W-FJG |

# PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri ("the Government") and Lake Ethan Roberts ("the defendant" or "Roberts"), represented by Lisa Nouri and Jane Francis. The defendant understands and agrees that this plea agreement is only between the defendant and the Government and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified.

2. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count One of the indictment that charges the defendant with violating 26 U.S.C. § 5845(a)(8), § 5861(d) and § 5871, that is, unlawful possession of unregistered firearms – destructive devices. By entering into this plea agreement, the defendant admits to committing this offense and to being guilty of this offense.

3. **Statutory Penalties.** The defendant understands Count One of the indictment carries the following maximum penalties: not more than 10 years' imprisonment, not more than 3 years supervised release, a fine of not more than $10,000, and a $100 mandatory special assessment

that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C Felony.

4. **Factual Basis for Guilty Plea.** The parties stipulate that the following facts are true and establish both a factual basis for the defendant's guilty plea and the defendant's guilt beyond a reasonable doubt:

> The defendant, Lake Ethan Roberts, admits and agrees that on or about May 14, 2026, in the Western District of Missouri, he knowingly possessed two firearms, specifically two destructive devices, which Lake Roberts referred to as "alcohol shooters filled with black powder surrounded with steel BBs" that constitute two improvised explosive devices ("IEDs"), also known as homemade bombs, generally consisting of explosive main charges, methods of initiation, and containers and enhancements, specifically bottles surrounded by BBs that were adhered to the bottles with duct tape, as defined in 26 U.S.C. § 5845(a)(8) and (f), that were not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26, United States Code, Sections 5861(a) and 5871.
>
> More specifically, beginning no later than June 2025, Lake Roberts participated with a group called the Red Legs. The Red Legs communicated via a group chat on Signal. The Red Legs Signal chat contained conversations and rhetoric that promoted violence against entities such as the United States Immigration Customs and Enforcement ("ICE"). Subjects discussed ambushing ICE agents, acquiring military weapons by attacking military trains, acquiring explosives, and numerous other plans for violence.
>
> There were many individuals participating in the Red Legs Signal private chat group. These individuals include three men hereinafter referred to as Red Legs Signal chat participant 1, Red Legs Signal chat participant 2, and Red Legs Signal chat participant 3.
>
> Upon learning of the Red Legs Signal private chat group conversations, the FBI successfully introduced an Undercover Employee ("UCE") to the subjects of the investigation. The UCE began providing information beginning October 2025, developed through the UCE's involvement in the Signal chats, as well as in-person conversations with various participants in the Red Legs group.
>
> In the Signal chats, Roberts communicated with other subjects about the group's plans to commit acts of violence against entities of the United States Government and local governments.
>
> Individuals in the Red Legs group discussed ambushing patrols and using incendiary devices on local government buildings. Participants in the group had communications about a recent deployment of the Missouri National Guard, other federal operations, and local ICE activity as triggers for enacting violence. The participants of the

Red Legs Signal private chat group commonly discussed certain federal activity which will constitute triggers for participants of the Red Legs group to engage in violent acts. Roberts contributed to these plans.

Below are text communications that Roberts shared with participants of the Red Legs Signal group. These communications were made between June 6, 2025, and May 12, 2026. Roberts admits that he sent the following communications and that the communications below:

- "We could make a technical, but it would cost money. We would get a government auction truck, weld a mount on the back, then get a psa heavy barreled air in 308, slap in a super safety or binary trigger, and a drum magazine."

- "It wouldn't make sense to panic now, the time for panicking has long passed. Now we must make our peace, arm ourselves, and prepare to do what is necessary."

- "If ice moves to kc, thoughts on an armed response."

- "After we build our ranks and adequately arm ourselves, we can look into escalation."

- "I recommend we start slow at first. Maybe some basic sabotage… We should locate abandoned warehouses where we could potentially secure seized armor… First, we need to find a way to track military shipments, we don't want to derail the wrong train."

- "We need to plan decisive action against ice and dhs."

- "What are the chances we could get away with using drones to drop incendiary's [sic] to demolish key infrastructure."

- "I like the idea of using drones carrying cocktails to demolish key structures…Frozen water areas."

- "Is anyone interested in a range day this week at Parma woods? The entry fee is $5. If you don't have a firearm, you are welcome to use mine. I am willing to supply both instruction, ammo, and access to my firearms."

- "See if you can locate any ice outposts in kc, we could look into sabotage."

- "This is one of those situations where we have to be careful. You can't just start ambushing them if the general population isn't ready to accept that yet. You have to, to some extent, meet the general population where they are at, otherwise the act won't be effective in inspiring further resistance, and would only serve end resistance right when it starts. If we want to hit hard, or best option is to engage in acts of sabotage, and target the homes of individual agents."

- "We should have a concrete plan as a group if this passes. We need to see how many of us need rifles and plates."

- "We need to be prepared to defend our communities."

During a meeting between the UCE, Roberts, and Red Legs Signal chat participant #3 on May 14, 2026, in Richmond, Missouri, located within the Western District of Missouri, Roberts brought two devices that he wanted to test to see how well they worked. The devices were wrapped in duct tape, and each had a green cord coming from the top of the device. Roberts described them as "alcohol shooters filled with black powder surrounded with steel BBs." The bottle had an aluminum cap with a hole in it for the "cannon fuse." The BBs were duct taped around the outside of the bottle. Roberts lit the fuse of the first device and threw it into a rock quarry area where it exploded. Roberts lit the second device, and again threw it into the quarry area, where it exploded.

After the second device exploded, Roberts, Red Legs Signal chat participant #3, and the UCE proceeded into the quarry to see if they could determine the damage, area of effect, and recover what was left of the devices. Roberts was able to find pieces of the devices. One of the devices was still partially intact with duct tape still on the device and BBs stuck in the duct tape. Remnants of the second device were found with most of the container destroyed. Roberts stated that he could improve the effects if he used a glass container instead of plastic.

On May 22, 2026, FBI Laboratory Explosives Unit provided an opinion that the information contained in the report and the conversations captured in the audio recording describe two improvised explosive devices ("IEDs"). According to the expert opinion, IEDs, also called homemade bombs, generally consist of an explosive main charge, method of initiation, and sometimes a container and/or enhancements.

These devices were described as small liquor bottles containing the low explosive black powder with cannon fuse being utilized as the method of initiation. Properly assembled, the described IEDs would be capable of causing property damage, injury, and/or death. An IED that demonstrates weaponization characteristics either through design or use meets the technical elements of a destructive device. Weapon design elements would include the addition of hardened items, such as BBs, in the IED's construction. These items would enhance the fragmentation effect created from the explosion of the IED, thus enhancing its lethality. The FBI Laboratory Explosive Unit provided an opinion that the two IEDs described in the report and audio recording would each meet the technical elements of a destructive device. Pursuant to this plea agreement, the defendant admits that the two devices he manufactured and possessed both qualified as destructive devices and accordingly he was required to register them in his name in the National Firearms Registration and Transfer Record. Roberts did not register the destructive devices as required by law.

On June 3, 2026, FBI KC executed a search warrant and an arrest warrant for

Roberts and his residence. At the residence, FBI KC recovered three firearms, and a suspected marijuana plant. Roberts acknowledges that the crime laboratory's testing of the suspected psychedelic mushroom powder and marijuana plant is still pending at the time of this agreement. He admits and agrees that the testing results, assuming they are available at the time of sentencing, will be produced to the Court and U.S. Probation for consideration at sentencing in addition to the firearms.

5. **Use of Factual Admissions and Relevant Conduct.** The defendant understands and agrees that the facts contained in paragraph 4 and other portions of this plea agreement, as well as admissions the defendant makes during the change of plea hearing, will be used to determine the defendant's guilt and the defendant's advisory sentencing range under the United States Sentencing Guidelines. The defendant likewise understands and agrees that the conduct charged in any dismissed counts of the indictment and all other uncharged related criminal activity may be considered as "relevant conduct" for purposes of calculating the defendant's advisory sentencing range under the Guidelines.

The defendant further understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under those rules and agrees that any such statements, as well as the facts contained in paragraph 4 and other portions of this plea agreement, may be used against the defendant at any time and in any proceeding should the defendant withdraw from this plea agreement.

6. **Sentencing Procedures.** The defendant understands that in determining the appropriate sentence, the Court may impose any sentence authorized by law. While the Court must consider the United States Sentencing Guidelines, the Guidelines are advisory and do not bind the Court. The Court will determine the defendant's advisory sentencing range under the Guidelines

at sentencing, but the Court may impose a sentence either above or below that range, so long as that sentence is reasonable.

The defendant further understands that the Court will find facts by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the defendant's advisory sentencing range under the Guidelines. The defendant waives any right to a jury finding beyond a reasonable doubt of all facts used to determine the sentence imposed and waives any right to have those facts alleged in an indictment. The defendant also understands that in finding the facts relevant to the imposition of the defendant's sentence, the Court may consider any reliable information, including hearsay, and that the Court will not be bound by any recommendation regarding the application of the Guidelines or the sentence to be imposed made by the United States Probation Office or the parties.

The defendant likewise understands that any term of imprisonment the Court may impose will not allow for parole and that in addition to a term of imprisonment the Court may impose a term of supervised release. The defendant further understands that a violation of a condition of supervised release could result in the Court imposing an additional term of imprisonment as well as an additional term of supervised release to follow, both subject to the statutory maximums set forth in 18 U.S.C. § 3583.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the Government agrees not to pursue any additional charges against the defendant for any federal criminal offenses related to the defendant's involvement in the plans of the Red Legs group as of the entry of plea agreement and known to the government, as well as the defendant's possession of controlled substances, the defendant's possession of firearms in furtherance of his drug

trafficking activities, and the defendant's possession of destructive devices for which it has venue and that arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for murder or attempted murder; physical or sexual violence; aiding and abetting, attempting, soliciting, or conspiracy to commit murder or physical or sexual violence; and any criminal activity currently unknown to the Government.

**8. Preparation of Presentence Report.** The defendant understands and agrees the Government will provide the Court and the United States Probation Office a version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which the defendant will plead guilty. The Government may respond to comments made or positions taken by the defendant or the defendant's counsel and may correct any misstatements or inaccuracies.

**9. Withdrawal of Plea.** Except for change of plea hearings before a United States Magistrate Judge, either party reserves the right to withdraw from this plea agreement at any time prior to the United States District Judge formally accepting the defendant's plea of guilty. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.

If the defendant waives the right to plead guilty before a District Judge and consents to plead guilty before a United States Magistrate Judge, then the parties' rights to withdraw from this plea agreement for any reason terminate upon the Magistrate Judge's completion of the change of plea hearing with a recommendation that the guilty plea be accepted.

After the District Judge accepts the defendant's guilty plea, or the Magistrate Judge completes the change of plea hearing, the defendant may withdraw the plea only if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts the plea, the defendant may not withdraw the plea solely because of the nature or length of the sentence imposed, including if the Court imposes a sentence that is outside the defendant's advisory sentencing range under the United States Sentencing Guidelines or a sentence that the defendant does not expect, like, or agree with.

**10. Agreed Guidelines Applications.** With respect to the application of the United States Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2K2.1(a)(5), which provides for a base offense level of at least 18.

b. The defendant has admitted guilt and clearly accepted responsibility for the defendant's actions, entitling the defendant to a two-level reduction pursuant to U.S.S.G. § 3E1.1(a). In addition, the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Consequently, if the Court finds the defendant's total offense level to be 16 or higher, the defendant is entitled to an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b). This plea agreement constitutes the Government's written motion with the Court for that reduction. This motion will be withdrawn, and the Government will be free to withdraw its recommendation that the defendant receive any reduction for acceptance if, after entering into this plea agreement, the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and the defendant's pretrial release, (2) attempts to withdraw the defendant's guilty plea, (3) violates the law, or (4) otherwise engages in conduct inconsistent with the defendant's acceptance of responsibility as described in U.S.S.G. § 3E1.1 and its commentary.

c. The parties have not reached an agreement regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that determination.

d. The parties acknowledge and agree that there are no agreements between the parties with respect to any Guidelines issues other than those specifically listed

in this paragraph, including its subparagraphs. As to any other Guidelines issues, the parties are free to advocate their respective positions before the Court.

11. **Government's Reservation of Rights.** The Government reserves the right to comment on the evidence supporting the offense conduct in this case and the right to oppose any position advanced by the defendant at sentencing that might be inconsistent with this plea agreement. The Government also reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The Government further reserves the right to oppose, when consistent with this plea agreement, any arguments the defendant might advance on direct appeal or in post-conviction proceedings. In particular, the Government remains free to defend the legality and propriety of the defendant's sentence on appeal or collateral attack, even if the Court chooses not to follow any recommendation made by the Government.

12. **Waiver of Constitutional Rights.** The defendant understands that a guilty plea is a complete and final admission of guilt, that by pleading guilty the defendant waives certain constitutional rights, and that the Court will adjudge the defendant guilty without a trial. In particular, the defendant acknowledges being advised of, understanding, and knowingly and voluntarily waiving (1) the right to plead not guilty and to persist in a plea of not guilty; (2) the right to be presumed innocent until the defendant's guilt has been established beyond a reasonable doubt at trial; (3) the right to a jury trial; (4) the right to be represented by, and receive the effective assistance of, counsel—and if necessary, have the Court appoint counsel—at trial and at every stage of the proceeding; (5) the right to confront and cross-examine adverse witnesses at trial; (6) the right to be protected from compelled self-incrimination; and (7) the rights to testify, to present evidence, and to compel or subpoena a witness to appear on the defendant's behalf at trial.

13. **Loss of Rights.** The defendant understands that by pleading guilty to a felony offense the defendant will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury. The defendant further understands that during the change of plea hearing, the Court may ask the defendant questions about the offense underlying the defendant's guilty plea, and if the defendant answers those questions under oath and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making a false statement.

14. **Waiver of Pre-Trial Motions.** The defendant understands the right to file certain pre-trial motions and knowingly and voluntarily withdraws any pending motions, waives the right to have any pending motions resolved, and waives the right to file any additional pre-trial motions in this case. This waiver includes, but is not limited to, any motions based on the statute of limitations, the Speedy Trial Act, or any grounds enumerated in Federal Rule of Criminal Procedure 12(b)(3).

15. **Waiver of Appellate and Post-Conviction Rights.** The defendant understands and acknowledges the right to directly appeal the conviction or sentence in this case and any right to challenge the conviction or sentence collaterally through post-conviction proceedings, including through proceedings under 28 U.S.C. § 2255, 28 U.S.C. § 2241, and *corum nobis*. In exchange for the concessions made by the Government in this plea agreement, the defendant knowingly and voluntarily waives all rights to directly appeal or collaterally attack the conviction or sentence on any non-jurisdictional ground except (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) a sentence greater than the statutory maximum. These are the only non-jurisdictional grounds for direct appeal or collateral attack not waived by this plea agreement.

The grounds for direct appeal or collateral attack that are waived include, but are not limited to, the following: sentencing errors such as a misapplication of the United States Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence; any restitution or forfeiture order; any challenge to the constitutionality of the statute or statutes to which the defendant is pleading guilty or under which the defendant is sentenced; any argument that the defendant's admitted conduct does not fall within the scope of the statute or statutes to which the defendant is pleading guilty; any argument that the defendant's plea was not voluntary; and any argument that the defendant's constitutional rights were violated, other than due to ineffective assistance of counsel or prosecutorial misconduct.

If, however, the Government exercises its right to appeal the sentence imposed under 18 U.S.C. § 3742(b), the defendant is released in part from this waiver and may cross-appeal the sentence imposed as allowed under18 U.S.C. § 3742(a) with respect to any issues that have not been agreed upon in this agreement.

The defendant acknowledges discussing this appeal waiver with counsel and understanding its terms. The defendant waives any explanation of the terms of this waiver under Federal Rule of Criminal Procedure 11(b)(1)(N).

**16. Waiver of FOIA Request.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974.

**17. Defendant's Breach of Plea Agreement.** If the Court determines the defendant committed any crime or violated any condition of release between the signing of this agreement and the date of sentencing; failed to appear for sentencing; provided intentionally misleading, incomplete, or untruthful information to the Government, the United States Probation Office or

the Court; or otherwise breached any term of this plea agreement, the Government will be released from its obligations under this agreement and will retain the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant, however, will remain bound by the terms of this agreement, and will not be allowed to withdraw the guilty plea entered pursuant to this agreement. The defendant likewise will waive the right to challenge the initiation of the dismissed or additional charges following a finding of breach, including by asserting a statute of limitations defense.

**18. Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges being satisfied with the assistance of counsel and that counsel has fully advised the defendant of the rights and obligations arising from this agreement. The defendant further acknowledges that no threats or promises, other than the terms and conditions of this agreement, have been made by the Government, the Court, the defendant's counsel, or any other person to induce the defendant to enter a plea of guilty.

**19. No Undisclosed Terms.** The parties agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court

in camera, constitute the entire plea agreement between the parties and that any purported term or condition not expressly set forth in this agreement, or an in-camera supplement, is not enforceable.

R. Matthew Price
United States Attorney

Dated: 9/18/26

Maureen A. Brackett
Assistant United States Attorney

I have consulted with my attorneys and fully understand all of my rights with respect to the offense charged in the indictment. Further, I have consulted with my attorneys and fully understand my rights with respect to the provisions of the United States Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I understand this plea agreement, and I voluntarily agree to it.

Dated: 9/24/2026

Lake Ethan Roberts
Defendant

We are defendant Lake Ethan Roberts's attorneys. We have fully explained to our client his rights with respect to the offense charged in the indictment. Further, we have reviewed with our client the provisions of the United States Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with our client. To our knowledge, Lake Ethan Roberts's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 9/24/26

Lisa Nouri
Attorney for Defendant

Dated: 9/24/2024

Jane Francis
Attorney for Defendant